UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>GERALD COOK,<br><br>Defendant. | Criminal No. 26-113 (PLF) |

MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant Gerald Cook's Motion to Compel ("Mot.") [Dkt. No. 33]. Mr. Cook has been charged with two counts of unlawful possession of a firearm under 18 U.S.C. § 922(g)(1) as well as one count of assault with a dangerous weapon under D.C. Code § 22-402. See Indictment [Dkt. No. 1]. The firearms were recovered from a vehicle parked near H Street Northeast in the early hours of November 1, 2025. Mr. Cook has moved to suppress the firearms and other evidence found in that vehicle on multiple grounds, including that the Metropolitan Police Department (the "MPD") firearm detection canine deployed to the scene did not alert to the presence of firearms prior to MPD officers searching the vehicle. See Motion to Suppress Tangible Evidence ("Mot. to Suppress") [Dkt. No. 31]. In the motion to compel, Mr. Cook asks this Court to compel the government to produce discovery related to the training and experience of two MPD canines—one named Trek, who did not alert to the presence of a firearm on the morning of November 1, 2025, and another named Odin, who did not alert to a firearm when Mr. Cook was arrested several months later.[1] After careful

[1] In his motion, Mr. Cook refers to the canine brought to the scene on November 1, 2025, as "Vulkan." See Mot. In his reply brief, Mr. Cook clarifies that this canine is more

consideration of the parties' written submissions and the relevant authorities, the Court granted Mr. Cook's motion by Order on September 11, 2026. [Dkt. No. 38]. This Opinion explains the reasoning behind that Order.

## I. BACKGROUND

For purposes of the instant motion, it is sufficient to note that, based on its review of surveillance cameras and witness statements, the government alleges the following. See Mot. to Suppress at 1-3; United States' Memorandum in Opposition to Defendant's Motion to Suppress Physical Evidence ("Suppress Opp.") [Dkt. No. 32] at 1-12. Late in the evening of October 31, 2025, a man and a woman were involved in a parking dispute on H Street Northeast. A man in a blue sweatshirt walked from across the street to insert himself into the parking dispute, threatening the woman and stating that he would slash her tires. The man in the blue sweatshirt then left the dispute and walked around the corner to a lawfully parked Range Rover SUV, where he opened the front passenger door, partially entered the front passenger seat, and then stepped back out. He then returned to the parking dispute and approached the woman's car. According to the woman's statement provided to the police, the man in the blue sweatshirt then pointed two firearms at her and verbally threatened her. The man then walked away from the dispute, returned to the SUV, opened the driver's door, entered and exited the SUV, and closed the door. He then walked around to the passenger side, opened the rear passenger door, took off the blue sweatshirt, and placed it inside the SUV. The man then reached inside the car and removed a multicolored jacket, which he put on, before walking away from the SUV.

---

commonly known as "Trek." See Reply in Support of Defendant's Motion to Compel ("Reply') [Dkt. No. 37] at 1 n.1.

Less than two hours later, around 1:00 a.m. on November 1, 2025, MPD identified the SUV, still parked in the same location off of H Street Northeast. MPD requested a firearm sniffing canine to come to the scene. Officer David Boarman arrived at the scene with a canine named Trek around 1:36 a.m. Officer Boarman led Trek around the SUV, but Trek did not alert to the presence of a firearm inside the SUV. Nonetheless, MPD officers decided to search the SUV, and did so around 1:51 a.m. During that search, officers found (1) a blue sweatshirt in the back of the car and (2) two firearms and extra magazines in the locked passenger-side glove box. The officers also recovered the vehicle registration with Mr. Cook's name on it. See Suppress Opp. at 12-14.

On April 15, 2026, Mr. Cook was arrested at a gas station, standing next to the same SUV that was searched on November 1, 2025. MPD officers again called for a firearm sniffing canine to come to the scene. See Suppress Opp. at 15. This time, Officer Michael Weiss answered the call with a canine named Odin. Odin did not alert to the presence of a firearm in the SUV, and officers did not search the vehicle. See Mot. at 2.

On August 12, 2026, Mr. Cook moved to suppress the tangible evidence recovered from the SUV on the morning of November 1, 2025. See Mot. to Suppress. In that motion, Mr. Cook argues, among other things, that regardless of whether MPD officers had the requisite level of suspicion to seize the SUV initially, "that suspicion dissipated after the gun-sniffing dog indicated that there was no firearm in the SUV." Id. at 7. In its opposition to the suppression motion, the government argues that "the police had established probable cause to search the vehicle prior to the canine arriving at the scene," and the fact that the canine did not alert "in no way vitiates that probable cause." Suppress Opp. at 27.

On August 28, 2026, Mr. Cook moved to compel the government to produce records "related to the training and experience" of Trek, Odin, and their handlers. Mot. at 1. He brings this motion pursuant to Rule 16 of the Federal Rules of Criminal Procedure; the Due Process Clause; Brady v. Maryland, 373 U.S. 83 (1963); and the Jencks Act, 18 U.S.C. § 3500. In his motion to compel, Mr. Cook contends that as of the date of the motion, the government had produced only two requested records regarding the two MPD canines, and that government counsel had stated on the record that the government would not produce any additional records in its possession. See Mot. at 1. On September 4, 2026, the government filed an opposition to Mr. Cook's motion. See United States' Memorandum in Opposition to Defendant's Motion to Compel ("Opp.") [Dkt. No. 35]. In its opposition, the government explains that "[a]fter further consideration," it "decided to produce records related to the training and experience of [Trek], the canine from the November 1, 2025, search." Opp. at 1. But the government continues to oppose "any additional production of records related to the training and experience of Odin, the canine from April 15, 2026." Id. at 1-2. Mr. Cook filed his reply on September 9, 2026. See Reply in Support of Defendant's Motion to Compel ("Reply") [Dkt. No. 37].

## II. LEGAL STANDARD

"Rule 16 of the Federal Rules of Criminal Procedure broadly mandates disclosure of material documents within the government's control upon a defendant's request." United States v. Bikundi, 926 F.3d 761, 782 (D.C. Cir. 2019).[2] Relevant here, Rule 16(a)(1)(E)

[2] Mr. Cook also contends that the canine records must be disclosed pursuant to the Due Process Clause; Brady v. Maryland, 373 U.S. 83 (1963); and the Jencks Act, 18 U.S.C. § 3500. See Mot. at 1. Because the focus of the briefing is whether disclosure is obligated under Rule 16, and because this discovery dispute can be resolved under the Rule 16 framework, the Court will not address the due process, Brady, and Jencks Act arguments. See Memorandum

provides that "[u]pon a defendant's request, the government must permit the defendant to inspect and to copy or photograph" items "within the government's possession, custody, or control" that are "material to preparing the defense." FED. R. CRIM. P. 16(a)(1)(E). As this Court previously has explained, Rule 16 requires the prosecution to "turn over everything in its possession or custody or control, regardless of the original source of the document or other object, so long as it is 'material' under the Rule." United States v. Safavian, 233 F.R.D. 12, 15 (D.D.C. 2005).

"Rule 16 is intended to provide a criminal defendant 'the widest possible opportunity to inspect and receive such materials in the possession of the Government as may aid him in presenting his side of the case.'" United States v. Safavian, 233 F.R.D. at 15 (quoting United States v. Poindexter, 727 F. Supp. 1470, 1473 (D.D.C. 1989)). Under Rule 16, "[e]vidence is material if there is indication that it may play [an] 'important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal.'" Id. (quoting United States v. Lloyd, 992 F.2d 348, 351 (D.C. Cir. 1993)). That is, there must be "at least 'a tenable relationship between the materials sought and the preparation of the defense.'" United States v. Trump, 753 F. Supp. 3d 17, 27 (D.D.C. 2024) (quoting United States v. Poindexter, 727 F. Supp. at 1480). The materiality "hurdle" of Rule 16 "is not a high one." United States v. George, 786 F. Supp. 11, 13 (D.D.C. 1991).

## III. DISCUSSION

In his motion to compel, Mr. Cook argues that he is entitled to discover records related to Trek and Odin's training and experience because those records are material to his

---

Opinion and Order, United States v. Gaines, Criminal No. 25-00145-CRC (Jan. 30, 2026), Dkt. 29 at 4 n.1 (taking the same approach).

argument that MPD lacked the requisite suspicion to seize or search the SUV on the morning of November 1, 2025. See Mot. at 4. After Mr. Cook filed his motion, the government provided him with the following records: (1) "PPMS-Canine-Deployment Vulkan (A document detailing K9 Vulkan's 340 deployments from April 2021 – November 1, 2025)"; (2) "Instructor Notes – Patrol Class #145 (an 82-page document detailing K9 Vulkan's patrol training and certification)"; (3) "Instructor Notes – Detector Class #79 (A 42-page document detailing K9 Vulkan's detector training and certification)"; (4) "Officer Boarman – Patrol Maintenance Training Notes (A 37-page document detailing K9 Vulkan's patrol maintenance training through November 1, 2025)"; and (5) "Officer Boarman – Detector Maintenance Training Notes (A 43-page document detailing K9 Vulkan's detector maintenance training through November 1, 2025)." Opp. at 4. The government asserts that these disclosures are consistent with the Supreme Court's guidance in Florida v. Harris, 568 U.S. 237 (2013), as to the government's Rule 16 discovery obligations. See Opp. at 4. In his reply, Mr. Cook argues that the government has not satisfied its Rule 16 obligations because, although it has produced some records, it still has not produced all available records for Trek or any available records for Odin. See Reply at 1. With respect to Trek, Mr. Cook says that the government has provided him with a summary of Trek's historical deployments but has not produced the underlying deployment records. See id. at 2.

On the issue of a criminal defendant's entitlement to canine records, the Court finds Judge Cooper's reasoned decision in United States v. Gaines persuasive. See United States v. Gaines, Criminal No. 25-145-CRC (Jan. 30, 2026), Dkt. 29. In that case, a firearm sniffing canine alerted to indicate that a firearm was present in a car, the car was entered by law enforcement, and a firearm was seized. See id. at 2. The defendant moved to suppress the

firearm, contesting the reliability of the canine because of the canine's erratic behavior at the scene. See id. at 2-3. The government refused to turn over the canine's records, relying on the Supreme Court's decision in Florida v. Harris, 568 U.S. 237 (2013), to argue that those records were not material to the defense. See United States v. Gaines, Dkt. 29 at 3. Judge Cooper rejected the government's argument, concluding that "[i]f anything," Florida v. Harris cuts in favor of the criminal defendant. Id. at 6.

In Florida v. Harris, the Supreme Court explained that "evidence of a dog's satisfactory performance in a certification or training program can itself provide sufficient reason to trust his alert," and once satisfactory performance is established, "a court can presume . . . that the dog's alert provides probable cause to search." Florida v. Harris, 568 U.S. at 246-47. The Supreme Court made clear, however, that such a presumption is "subject to any conflicting evidence offered." Id. at 247. The defendant therefore "must have an opportunity to challenge such evidence of a dog's reliability, whether by cross-examining the testifying officer or by introducing his own fact or expert witnesses." Id. "[A] probable-cause hearing focusing on a dog's alert," the Supreme Court explained, "should proceed much like any other," with the court "allow[ing] the parties to make their best case, consistent with the usual rules of criminal procedure." Id. This Court agrees with Judge Cooper that "[i]f a defendant must have a fulsome opportunity to contest a contraband-sniffing dog's reliability at the pertinent time, it follows that he should have access to sufficient records to mount such a challenge." United States v. Gaines, Dkt. 29 at 6-7. "[T]he defendant's entitlement to such records under Rule 16 comes back to the familiar standard—i.e., whether he can 'show at least "a tenable relationship between the materials sought and the preparation of the defense" to those allegations.'" Id. at 7 (quoting United States v. Trump, 753 F. Supp. 3d at 27).

The Court concludes that Mr. Cook has made that modest showing with respect to Trek. As outlined in his suppression motion, Mr. Cook intends to argue that "any reasonable suspicion that may have justified the initial seizure of the SUV dissipated when the firearm detecting dog failed to alert." Mot. to Suppress at 7. "[W]hether reasonable suspicion exists depends on the totality of circumstances," United States v. Bailey, 622 F.3d 1, 6 (D.C. Cir. 2010), and the relevant circumstances include the fact that Trek did not indicate a firearm was present in the SUV. The strength of Mr. Cook's argument, then, necessarily is informed at least to some extent by Trek's reliability. A "tenable relationship" surely exists between the preparation of Mr. Cook's dissipation defense and Trek's deployment and training records. United States v. Trump, 753 F. Supp. 3d at 27.

The government therefore must produce records related to Trek's training and experience. That includes the records for Trek's past deployments, "which MPD apparently maintains in the form of a 'Canine Deployment' document that is prepared after each deployment." United States v. Gaines, Dkt. 29 at 8; see United States v. Mickens, Criminal No. 25-48 (AHA), Dkt. 28 at Ex. 1. These field deployment records, "especially in combination with other evidence, . . . may shed further light on [Trek's] reliability." United States v. Gaines, Dkt. 29 at 8. Mr. Cook need not limit himself to a summary of those deployment records, which, according to him, is all the government has produced. See Reply at 2; Opp. at 4. To the extent that the deployment records underlying the government's summary are "within the government's possession, custody, or control," FED. R. CRIM. P. 16(a)(1)(E), the records must be produced.

The Court also concludes that Mr. Cook has made the requisite modest showing under Rule 16 with respect to Odin. See United States v. Trump, 753 F. Supp. 3d at 26-27. As Mr. Cook points out, "[t]here are two dogs at issue in this case," the non-alerts from which the

government responded to differently. Reply at 3. When Trek did not alert to a firearm during his sniff of the SUV on November 1, 2025, MPD nonetheless proceeded to search the vehicle, whereas when Odin did not alert to a firearm during his sniff on April 15, 2026, MPD did not conduct a search. "Mr. Cook is entitled to compare the records of the two and discern what reason—if any—officers had for disregarding the trained non-alert from Trek." Id.

Moreover, the requisite relationship exists between the records for both Trek and Odin on the one hand and Mr. Cook's "witness preparation" on the other, including the preparation of a possible expert witness in the field of detector dogs as well as preparation for "impeachment or rebuttal" of any potential government witnesses. United States v. Trump, 753 F. Supp. 3d at 26 (quoting United States v. Lloyd, 922 F.3d at 351); see United States v. Gaines, Dkt. 29 at 7. Indeed, counsel for Mr. Cook maintains that in their experience "a canine expert cannot assess or opine on the reliability of a particular canine without . . . information" on that canine's deployment and training. Mot. at 6. "Whether helpful or harmful to [Mr. Cook's] case, the records are poised to alter his 'quantum of proof.'" United States v. Gaines, Dkt. 29 at 8.

## IV. CONCLUSION

For the reasons explained in this Opinion, the Court GRANTED Defendant's Motion to Compel [Dkt. No. 33] on September 11, 2026. An Order to that effect was issued on September 11, 2026 [Dkt. No. 38].

SO ORDERED.

Paul L. Friedman

PAUL L. FRIEDMAN
United States District Judge

DATE: 9/14/26